**EM LTD., Plaintiff–Appellee,**

v.

**THE REPUBLIC OF ARGENTINA,
Defendant–Appellant.**

No. 03–9275.

United States Court of Appeals,
Second Circuit.

Argued June 10, 2004.

Decided Aug. 31, 2004.

Jonathan L. Blackman, New York, N.Y. (Carmine D. Boccuzzi and Cleary, Gottlieb, Steen & Hamilton, of counsel), for Defendant–Appellant.

David W. Rivkin, New York, N.Y. (John B. Missing, Dennis H. Hranitzky and Debevoise & Plimpton, LLP, of counsel), for Plaintiff–Appellee.

Before OAKES and RAGGI, Circuit Judges, and HOLWELL,* District Judge.

* Honorable Richard J. Holwell, United States District Judge for the Southern District of New York, sitting by designation.

PER CURIAM.

The Republic of Argentina ("Argentina") contests the right of its bondholder, EM Ltd. ("EM"), to collect the amount due on defaulted bonds in United States dollars rather than Argentine pesos, which are significantly devalued in relation to the dollar. There is no question that Argentina defaulted on the bonds or that EM has declared due the principal amount it is owed. Rather, the parties take differing views as to whether the bond certificates and Fiscal Agency Agreement (collectively "the bond documents") require EM to collect what it is owed in pesos, thereby receiving a substantially smaller sum, or whether EM is allowed to elect to receive payment in dollars at the contractually set rate of one dollar per peso. The United States District Court for the Southern District of New York, Thomas L. Griesa, *Judge*, granted summary judgment to EM, concluding that the language of the bond documents, specifically the acceleration provision and the election provision, allowed for EM to elect to be paid in dollars at the one-to-one ratio.

We are presented in this appeal with a simple question of contract interpretation. The bond documents provide in an acceleration clause that when accelerating in the event of a default, the bondholder "shall declare the principal amount (that is, the par value)" of the bonds due and payable as a consequence of the default. The documents contain an election provision which states that:

with respect to any payment, the Holder of this Security elects to receive such payment in U.S. dollars by giving notice to the Fiscal Agent in writing not later than the close of business on the fifth

business day prior to the applicable Interest Payment Date, the Maturity Date or other date of payment, as the case may be[.]

The documents are explicit that when payment in dollars is elected, "payment will be made in U.S. dollars at the ratio of one U.S. dollar to one Argentine peso regardless of the changes in foreign exchange rates."

Argentina argues that the words "par value" in the acceleration clause mean the face value of the bonds, which in this case is denominated in pesos.[1] In other words, because the acceleration clause uses the term "par value," an accelerated payment must be made in pesos for the peso amount on the face of the bonds. Argentina also contends that the election clause cannot be read to apply to an accelerated payment, thereby removing any possibility that such a payment can be required in dollars. We find both of these arguments to be without merit.[2]

First, we cannot agree with Argentina that because the bonds are denominated in pesos, an accelerated payment of the principal amount can only be made in pesos. To support its position, Argentina cites the decision of the New York Court of Appeals in *Village of Fort Edward v. Fish,* 156 N.Y. 363, 370, 50 N.E. 973 (1898), where the court held that " '[p]ar' means equal, and par value means a value equal to the face of the bonds." But in *Fish,* the face value of the bonds was found to be $50,444.44: the $50,000 amount denominated on the bonds plus accrued interest of $444.44. *Id.* at 371, 50 N.E. 973. If the "par value" of the bonds was equal to the face value, as stated by the court, then the

par value was not the amount actually denominated on the bonds. We are therefore unwilling to rely on *Fish* to give "par value" the determinative reading Argentina urges in this case. Instead, because the term "par value" as used here modifies the term "principal amount," the acceleration clause more readily lends itself to the interpretation that "par value" means the amount due or owed to the bondholder. Indeed, it was this amount that was found to be the face value in *Fish.* Accordingly, we reject Argentina's position that the use of the words "par value" requires that payment of accelerated principal must be in pesos.

Although the words "par value" do not, in and of themselves, determine the outcome here, there can be no doubt that if the bond documents did not contain an election clause, the amount due upon acceleration would be the principal amount as denominated in pesos. As we noted in oral argument, defaulting parties are not free to pay the principal due upon declaration in whatever currency they choose. So it is the election clause that is at the heart of this matter, and its applicability that we must decide.

Argentina argues that, despite the plain language of the election clause allowing the bondholder to elect payment in dollars "with respect to any payment," the election clause cannot apply to an accelerated payment because it requires the accelerating party to provide five days' notice of election. The five-day notice requirement, Argentina contends, is irreconcilable with the fact that, according to the acceleration provision, accelerated payments are due and payable immediately. Put another

---

1. EM owns bonds with a value of 595,396,345 Argentine pesos.

2. Argentina argued additionally in its brief that the dollar election language of the certifi-

cates applies only to payments of matured, not accelerated, principal and interest. It abandoned this claim at oral argument.

way, the accelerating party cannot demand immediate payment and elect to have that payment made in dollars five days later. It is Argentina's view that, due to this perceived irreconcilability, the election clause does not apply to accelerated payments.

EM points out, however, that there is no actual tension between the language of the acceleration clause and the five-day notice requirement of the election clause. Upon acceleration, the principal is declared due and *payable* immediately. In electing the payment currency, the bondholder must notify Argentina five days before the date of *payment*. EM argues, and we agree, that "payable" and "payment" are not the same: one means that payment is owed and the other means that payment is made. If the bondholder elects to receive payment in dollars five days before payment is tendered, then the provisions of both the acceleration and the election clauses are fully met.

Mindful of our duty to harmonize the terms of a contract whenever possible, *see Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir.2000), we decline to read the language of the bond documents as establishing that the date of payment in the election clause and the date the bond becomes payable under a notice of acceleration are the same day. The commonsense interpretation of "the date of payment" is the date when money is actually tendered to satisfy the debt. Here, when EM accelerated in response to Argentina's default, the amount owed to EM became payable immediately upon the notice of acceleration. Because payment was not tendered immediately—and indeed has never been tendered—EM's election in the acceleration notice to be paid in dollars occurred

five days before payment, thereby meeting the election notice requirement.[3]

When the acceleration and election clauses are read in conjunction, there can be no doubt that Argentina is required to pay EM the accelerated principal in dollars at a rate of one dollar per peso. The election clause states clearly that it applies "with respect to any payment" and that notice of election must be given on the "fifth business day prior to the applicable Interest Payment Date, the Maturity Date or *other date of payment* " (emphasis added). We see no reason why payment of accelerated principal would not be encompassed by such contractual language. If the parties intended that an accelerated payment of the principal amount could be made only in pesos, they would have said so directly, either in the acceleration clause itself or by excluding accelerated payments from the election clause.

We therefore reject the strained reading of the bond documents put forth by Argentina. Additionally, we have considered Argentina's arguments with respect to the defaulted March 19, 2002, interest payment and conclude that no genuine issues of fact are raised requiring reversal of summary judgment on that issue. Accordingly, we hold that EM is entitled to collect the amount due on the defaulted bonds in dollars and affirm the grant of summary judgment to EM.

---

**3.** Had Argentina tried to pay the amount due in pesos on one of the five days following the notice of acceleration, this would be a differ-

ent case. During that period, the five-day notice requirement would not have been met.